**ANR PIPELINE COMPANY and ANR Storage Company, Plaintiffs,**

v.

**The MICHIGAN PUBLIC SERVICE COMMISSION, Defendant.**

No. G84–438 CA 5.

United States District Court, W.D. Michigan, S.D.

Sept. 10, 1984.

---

Mika, Meyers, Beckett & Jones by John C. Jones, Grand Rapids, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen. by Don L. Keskey, R. Philip Brown and Jeffrey S. Fishman, Lansing, Mich., for defendant.

## OPINION RE MOTION TO DISMISS AND MOTION TO AMEND

HILLMAN, District Judge.

This is an action under 42 U.S.C. § 1983 against the Michigan Public Service Commission (MPSC), an administrative body of the State of Michigan. Plaintiffs challenge the constitutionality of the State regulatory scheme which charges the MPSC with regulating the sale of securities by the plaintiffs, and request a declaratory judgment that the regulatory plan is unconstitutional. The matter is now before the court on plaintiffs' motion to amend, and MPSC's motion to dismiss, pursuant to Fed.R.Civ.P. 12.

Plaintiffs in this case, ANR Pipeline Co. and ANR Storage Co., engage in the purchase, transmission, storage and sale of natural gas. As natural gas companies, both are subject to regulation by the Federal Energy Regulatory Commission. Among the methods for raising capital employed by plaintiffs include the issuance of stock and long term bonds. Therefore, plaintiffs are also regulated by the Securities and Exchange Commission.

At the state level, plaintiffs are subject to the regulation of the MPSC. Under M.C.L.A. § 460.1, *et seq.*, the MPSC has a broad range of regulatory powers over public utility companies operating in Michigan. Under M.C.L.A. § 460.301, the MPSC regulates the issuance and sale of securities by public utility companies. Plaintiffs have filed this action challenging the constitutionality of the state regulatory scheme. Although plaintiffs do not have a proposed public offering on file with either the SEC or MPSC, the MPSC has consistently exercised its jurisdiction over plaintiffs.

## MOTION TO AMEND

■ Plaintiffs have moved to amend the complaint to add the three commissioners of the MPSC as individual defendants.

Rule 15(a) of the Federal Rules of Civil Procedure provides that after service of a responsive pleading, a party may amend his pleading only by leave of court or by written consent of the adverse party. Rule 15 goes on to state that "leave shall be freely given when justice so requires." Since plaintiffs' amended complaint seeks to add additional parties, Rule 21 is also applicable. It provides that, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

■ In addition, a pleading may be amended once as a matter of course at any time before a responsive pleading is served. Fed.R.Civ.P. 15(a). A motion to dismiss, such as the one here, is not a responsive pleading within the meaning of the rules. *Hanraty v. Ostertag*, 470 F.2d 1096 (10th Cir.1972). The complaint was filed on April 25, 1984. The motion to amend was filed less than one month later, on May 21, 1984. There has been no unreasonable delay. Nor have defendants cited any prejudice that would result if the motion is granted. Accordingly, plaintiffs' motion to amend the complaint to add the individual commissioners as defendants is granted.

## MOTION TO DISMISS

Defendant MPSC raises several arguments in support of its motion to dismiss. First MPSC argues that the court may not grant the relief requested under 42 U.S.C. § 1983 because neither plaintiffs nor defendant are "persons." Second, MPSC argues that it is immune from suit in federal court under the eleventh amendment to the

**46**

United States Constitution. Third, MPSC argues that plaintiffs have not made a claim cognizable under 42 U.S.C. § 1983. Fourth, MPSC contends that principles of federalism and comity demand that the court abstain from hearing this case. Finally, MPSC contends that plaintiffs have failed to establish a case or controversy.

**A**

■ 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute ... of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person ... to the deprivation of any rights ... secured by the Constitution and laws shall be liable ... in an action at law, [or] suit in equity...."

MPSC argues that, since section 1983 refers only to "persons" or "citizens," plaintiffs may not sue under section 1983, nor may the MPSC be a section 1983 defendant. The Supreme Court, in *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), held that "a corporation is a 'person' within the meaning of the equal protection and due process of law clauses." *Id.* at 244, 56 S.Ct. at 446. Federal courts dealing with corporate claims under section 1983 have consistently concluded that a corporation is an "other person" for section 1983 as long as the corporation is suing in its own right. In *Monell v. New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that a municipal corporation was a person within the meaning of the civil rights statutes. The Court noted: "... it [is] well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." *Id.* at 687, 98 S.Ct. at 2034.

The case of *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1938), cited by the MPSC in its brief, in support of its position that corporations are not persons, is inapplicable here. In *Hague*, the Court merely held that a corporation is not a citizen and, therefore, may not bring suit under the privileges and immunities clause. *Id.* at 514, 59 S.Ct. at 963. Nothing in *Hague* compels the conclusion that a corporation is not a person for the purposes of section 1983. Indeed, almost every lower court which has considered the question has concluded, following *Grosjean*, that a corporation may bring an action under section 1983. *Cf. Raymond Motor Transport v. Rice*, 417 F.Supp. 1352 (W.D.Wisc.1976), *rev'd on other grounds*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1977). *Gentry v. Howard*, 365 F.Supp. 567 (W.D.La.1973); *Mini Cinema 16 of Fort Dodge v. Habbab*, 326 F.Supp. 1162 (N.D.Ind.1970). It is clear then that the fact that ANR Pipeline and ANR Storage are corporations is not a bar to their section 1983 claims.

■ However, the MPSC's argument that it is not a section 1983 defendant is correct. The eleventh amendment to the Constitution provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."

Eleventh amendment immunity extends not only to the state, but also to state agencies. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 662 (1974). The Supreme Court recently had occasion to consider eleventh amendment immunity in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Pennhurst*, the Court noted:

"This Court's decisions thus establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.' *Employees [of Dept. of Public Health & Welfare]*, *supra*, 411 U.S. [279], at 280, 93 S.Ct. [1614], at 1616 [36 L.Ed.2d 251 (1973)]. There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named

as the defendant is proscribed by the Eleventh Amendment. *See, e.g., Florida Department of Health v. Florida Nursing Home Assn,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (*per curiam*); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam*). This jurisdictional bar applies regardless of the nature of the relief sought. *See, e.g., Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ('Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State')."

*Id.,* 104 S.Ct. at 908. In *Alabama v. Pugh,* cited by the Court above, and more recently, in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court expressly held that the eleventh amendment is a jurisdictional bar to a section 1983 action against a state. Moreover, there can be little doubt that the MPSC, as an integral state agency, is entitled to the same immunity as the state itself. *See Pennhurst, supra; Dagnall v. Gegenheimer,* 645 F.2d 2 (5th Cir.1981); *Savage v. Pennsylvania,* 475 F.Supp. 524 (E.D.Pa.1979); *Usury v. La. Dept. of Hwys,* 459 F.Supp. 56 (E.D.La.1978).[1] Therefore the 1983 claims against the MPSC are dismissed.

However, the fact that the MPSC itself is immune from suit under section 1983 does not require dismissal of the entire suit.

The addition of the individual commissioners as defendants adds parties who do not enjoy the same eleventh amendment immunity as the MPSC. It is well settled that:

"[There is] an important exception to this general rule [of eleventh amendment immunity]; a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young,* 209 US 123, 52 LEd 714, 28 S Ct 441 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing a suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.' *Id.,* at 160, 52 LEd 714, 28 S.Ct. 441[at 454]. Since the state could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.' Ibid."

*Pennhurst, supra,* 104 S.Ct. at 909.

This is precisely the exception that plaintiffs rely on. They argue that the regulatory scheme here is unconstitutional and, therefore, the individual members of the MPSC cannot enjoy eleventh amendment immunity. Therefore, the individual commissioners are proper defendants.

---

**1.** Plaintiffs argue that the MPSC is a proper person under section 1983 for purposes of injunctive or declaratory relief. They cite two cases in support of this argument, *Harris v. Arizona Board of Regents,* 528 F.Supp. 987 (D.Ariz.1981), and *Weisbord v. Michigan State University,* 495 F.Supp. 1347 (W.D.Mich.1980), both of which held state supported universities were "persons" for the purposes of section 1983. Putting aside for a moment the differences between a state university and a state regulatory agency, there is a split of opinion over whether an arm of the state as independent as a state university can be a "person" under section 1983. This court had occasion to consider that very question in *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.

1980). There I concluded that a state university was a state agency protected by the eleventh amendment, and could not be sued under section 1983. *Id.* at 1162. Other courts have concurred. *See, e.g., Prebble v. Broderick,* 535 F.2d 605 (10th Cir.1976); *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.1971); *Walsted v. University of Minnesota Hosp.,* 442 F.2d 634 (8th Cir.1971). In any event, I am convinced that an arm of the MPSC is an arm of the state protected by the eleventh amendment, and is not a "person" for the purposes of section 1983. Plaintiffs cite no authority for the proposition that an action for an injunction or declaratory relief should be treated differently than any other action under section 1983.

### B.

■ The MPSC's next argument is that section 1983 applies only to equal rights legislation, and that rights under the Supremacy Clause and the Commerce Clause are not rights protected under section 1983. The Sixth Circuit recently examined this issue in *Martin-Marietta Corporation v. Bendix Corporation,* 690 F.2d 558 (6th Cir. 1982). *Citing Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Court recognized that a "right" secured by the Supremacy Clause and the Commerce Clause was a "right" protected under section 1983:

> "Martin-Marietta and United Technologies both state claims under section 1983. Each alleges, in part, that the provisions of the Michigan Take-Over Offers Act and the Michigan Uniform Securities Act, including the anti-fraud provisions, are violative of the Supremacy Clause and the Commerce Clause of the United States Constitution and that their enforcement by the State of Michigan and/or Bendix would deprive them of rights secured under the Williams Act and these constitutional provisions. *Maine v. Thiboutot* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed 2d 555 (1980)."

*Id.* at 562.

*Maine v. Thiboutot,* cited above, established that the language of section 1983 encompasses a broad range of constitutional and federal statutory violations. At least one other court has considered the question of whether section 1983 protects rights secured under the Supremacy and Commerce Clauses, and answered affirmatively. In *Kennecott Corp. v. Smith,* 637 F.2d 181, 186 (3d Cir.1980), the court noted: "The present action is properly brought under § 1983 because it seeks redress for deprivations of constitutional rights secured by the commerce clause." The rights protected by section 1983 are not as strictly circumscribed as the MPSC argues. Plaintiffs' claims under the Supremacy and Commerce Clauses are properly brought under section 1983.

### C.

■ Defendant argues that the court should abstain from hearing the case until the question has first been presented to the MPSC. The MPSC argues that plaintiffs, having failed to exhaust their administrative remedies, are not entitled to federal relief. While it is true that plaintiffs do not currently have an application pending before the MPSC, defendant does not dispute that, in the past it has specifically, ruled that it has jurisdiction over the plaintiffs. See Order dated March 10, 1981, in Case No. U–67661 (ANR Pipeline Co.); Order, dated July 31, 1979, in Case No. U–6189 (ANR PL Co.); Order, dated September 11, 1979, in Case No. U–6257 (ANR PL Co.); Order dated March 2, 1982, in Case No. U–7108 (ANR PL Co.); Order dated March 31, 1983, in Case No. U–7572 (ANR PL Co.); Order, dated November 24, 1981, in Case No. U–7032 (ANR Storage Co.); and Order, dated May 18, 1983, in Case No. U–7617 (ANR Storage Co.). The MPSC has consistently asserted jurisdiction over the public offerings of plaintiffs and there can be no doubt that they will continue to do so.

■ Defendants base their abstention argument on the doctrines promulgated in the three leading abstention cases: *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, in reviewing a request to abstain, a court should keep in mind the ruling in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). There, the Supreme Court stated that abstention from the exercise of federal jurisdiction is the exception not the rule.

■ Under the doctrine enunciated in *Pullman,* when a state law is being challenged in federal court as unconstitutional and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case

and allow the state courts to decide the state issues. *Pullman* abstention is appropriate in a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question. *Babbit v. UFW*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979). The rationale behind the *Pullman* doctrine is the avoidance of unnecessary resolution of constitutional questions by allowing state courts an opportunity to interpret an ambiguous state statute so that it is constitutional. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1977).

*Pullman* abstention, which the Court has described as applicable only in "narrowly limited, special circumstances," *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967), does not apply when the state law is clear. Both the plain language of the statute, M.C.L.A. § 460.301, and subsequent interpretation of that statute by the Michigan Supreme Court make it clear that the statute applies to plaintiffs. *See Michigan Gas Storage v. MPSC*, 405 Mich. 376, 275 N.W.2d 457 (1979); *Indiana and Michigan Power Co. v. State*, 405 Mich. 400, 275 N.W.2d 450 (1979). In addition, the MPSC itself has asserted jurisdiction over the plaintiffs. This is not a case then, involving an ambiguous statute, and it is not a case for *Pullman* abstention. As the Supreme Court has noted:

> "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim."

*Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971). *See also Babbitt v. United Farm Workers, supra; Cusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973); *Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983).

Nor is this a case for *Younger* abstention. In *Younger*, the Supreme Court held that abstention is appropriate where, absent bad faith, harrasment or a patently invalid statute, federal jurisdiction has been invoked for the purpose of restraining a pending state proceeding. The Sixth Circuit recently had occasion to consider the propriety of *Younger* abstention in which there was no pending state proceeding. In *WXYZ v. Hand*, 658 F.2d 420, 423 (6th Cir.1981), the court noted:

> "As it applies to this case, the abstention rule of *Younger v. Harris, supra*, and its progency is clear. Lacking extraordinary circumstances, a federal court cannot enjoin a pending state criminal proceeding. *Park v. Turner*, 626 F.2d 1 (6th Cir.1980). Subsequent decisions have expanded the range of state proceedings to which the rule is applicable. However, when no state proceeding is pending, and considerations of equity, comity, and federalism are therefore diminished, a federal court may consider constitutional challenges to state statutes and grant declaratory and injunctive relief."

[Citations omitted.] The absence of pending state proceedings, which caused the *WXYZ, Inc.* court to reject a *Younger* abstention request has also been the ground for rejection in other cases. *See Kennecott Corp. v. Smith, supra; HBO, Inc. v. Wilkinson*, 531 F.Supp. 987 (D.Utah 1982).

■ Finally, I conclude that *Burford* abstention is not required here. *Burford* involved an attack upon the validity of an order of the Texas Railroad Commission granting petitioner a permit to drill several oil wells. Jurisdiction was invoked on diversity and federal question grounds, the federal question being a constitutional due process challenge to the order. The Supreme Court, after recognizing that abstention may be appropriate both in cases of diversity and federal question jurisdiction, held that the federal court should have abstained from the case on the ground that the issues involved concerned a specialized aspect of a complicated regulatory system

of local law, which should have been resolved by specialized local administrative bodies and courts. The Court listed two factors which justified abstention: (1) the presence of a complex state regulatory scheme which would be disrupted by federal court review; and (2) the existence of a state created forum with specialized competence in the particular area. *Burford supra*, 319 U.S. at 327, 332–33, 63 S.Ct. at 1104, 1106–07. *Burford* abstention is not appropriate "merely because resolution of a federal question may result in the overturning of a state policy. *Zablocki v. Redhail*, 434 U.S. 374, 380, n. 5, 98 S.Ct. 673, 678, n. 5, 54 L.Ed.2d 618 (1978). The state must exhibit an overriding interest in the subject matter, and the state must centralize review in a forum with special competence. *Ada-Cascade Watch Co. v. Cascade Resource Recovery*, 720 F.2d 897, 903 (6th Cir.1983).

The MPSC has not demonstrated an overriding state interest. The issuance of securities or long-term debt by an interstate natural gas company is a matter of national concern, and is regulated by the FERC and the SEC. Moreover, plaintiffs base their claim, at least in part, on the Supremacy Clause and federal preemption. These are not matters within the special competence of local courts. As the Ninth Circuit noted in *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374 (9th Cir.1982):

> "*Burford* abstention is particularly inappropriate when the plaintiff's claim is based on preemption, because abstaining under *Burford* would be an implicit ruling on the merits."

*Id.* at 377.

Because neither *Pullman, Younger* or *Burford* abstention is necessary, I decline to dismiss this action on those grounds. In doing so, I obviously make no determination of the merits of plaintiffs' claim, I merely conclude that this is an appropriate forum for that claim to be heard.

### D.

■ The MPSC's final argument for dismissal is that there is no actual case or controversy. Article 3, section 2 of the Constitution allows a federal court to act only on cases or controversies. The Declaratory Judgment Act, 28 U.S.C. § 2201, applies only in a "case of actual controversy." The classic statement of this Constitutional and statutory requirement was provided by the Supreme Court in *Maryland Cas. Co. v. Pacific Coal and Oil*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941):

> "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* at 273, 61 S.Ct. at 512.

Whether facts are sufficiently immediate and real to make an actual controversy is something that must be worked out on a case-by-case basis. *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir.1968).

■ In this case there is no dispute that plaintiffs have issued securities and bonds in the past, and will continue to do so in the future. Nor is there any dispute over the fact that the MPSC has exercised jurisdiction over those public offerings. Enforcement of the Michigan statute is not just a threat. Repetitive enforcement of M.C. L.A. § 460.301 has occurred and there is no reason to believe it will not occur in the future. The MPSC's opposition to this lawsuit attests to that fact. In such a situation, where there is a reasonable likelihood the parties will be involved in an identical dispute in the future, an actual controversy exists. *See Terry v. Penn Central Corp.*, 668 F.2d 188 (3d Cir.1981). *See also Armour & Co. v. Ball*, 468 F.2d 76 (6th Cir.

1972). On these facts, I conclude that an actual controversy exists.

## CONCLUSION

Plaintiffs' motion to amend the complaint is granted. Defendant's motion to dismiss is granted in part and denied in part.